# CHARLES WILLIAM PACY *vs.* MARY A. P. COSGROVE'S EXECUTOR.

*Executors and Administrators—Validity of Sale Made by Executor After Filing of Caveat to Will.*

When a will has been admitted to probate, in common form without contest, a sale of real estate made by the executor in pursuance of a testamentary power is valid, although a caveat to the will was filed before the ratification of the sale, since Code, Art. 93, sec. 26, provides that all acts done by any executor or administrator according to law before any actual or implied revocation of his letters shall be valid and effectual.

*Decided June 23rd; 1910.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON and URNER, JJ.

*Chester F. Morrow* (with whom was *Oscar Wolff* on the brief), for the appellant.

*Edgar H. Gans,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court for Baltimore City overruling exceptions filed by the purchaser to the ratification of a sale of certain real estate, made by an executor under a power contained in the will of his testatrix, and finally ratifying said sale.

Mary A. P. Cosgrove died January 4th, 1910, leaving a will executed February 28th, 1907, which was admitted to probate by the Orphans' Court for Baltimore City, in common form, on January 7th, 1910. Three small legacies were given thereby to the children of three deceased cousins of testatrix, and ten legacies to different persons or institutions for religious or charitable purposes, amounting to $22,000; and the residue of the estate, which is not disclosed by the record, is given to the Reverend Archbishop of Baltimore. The Safe Deposit and Trust Company of Baltimore was named as executor of said will, and said executor was authorized "to sell or otherwise dispose of all or any portion of said estate necessary in its discretion to settle the same," and letters testamentary were granted to the executor named in the will, on the same day the will was admitted to probate.

On February 16th, 1910, the Safe Deposit and Trust Company of Baltimore, reported to said Orphans' Court "that in the settlement of the estate of said deceased it *will* be necessary to sell the property hereinafter mentioned, and in the exercise of the power conferred upon it by said will, it *did* after due advertisement, etc., sell at public auction on the premises, on February 15th, 1910, a lot of land with the improvements thereon, being No. 1102 South Charles street, for $12,300 upon the terms mentioned in the copy of the advertisement filed with the report," and prayed the ratification of said sale. This was fee simple property and was advertised and sold as such. On the same day, February 16th, 1910, the usual order *nisi* was passed by the Orphans' Court, and on April 1st, 1910, the certificate of the publication of the order *nisi* for the prescribed time was filed in the Court.

On February 16th, 1910, the date of the report of sale, certain persons alleging themselves to be the nearest of kin of Mary A. P. Cosgrove filed a caveat against said executor in said Court alleging that the paper admitted to probate was not the testatrix's will; that it was not signed by her, or by anyone in her presence and by her direction; that she did not know or understand its contents, and that she was not of sound mind at the time of its alleged execution. This was answered by the executor, setting up the previous filing by the same caveators in the Circuit Court No. 2 of Baltimore City of a bill in equity against the said executor and the legatees in said will, praying for the construction of said will and for a decree declaring some of said legacies to be invalid; and the executor claimed that this was an election by the caveators to treat said will as a valid will, and was a bar to their right thereafter to contest its validity.

On March 8th, 1910, James Gormley and Martha Columbus, filed a petition in said Court alleging that he was a first cousin and she a second cousin of Mary A. P. Cosgrove and as such entitled to share in her estate; alleging the various proceedings in reference to the will in question, and that these were without any notice to the next relatives of the decedent as required by Code, Art. 93, sec. 336, and without any effort to discover whether such relations existed, and they prayed that the executor be required to answer, and that the letters testamentary issued to it be revoked.

On the following day the original petitioners and caveators filed another petition alleging that the facts stated in the petition of James Gormley and Martha Columbus were true, and that they therefore joined in it, and prayed the revocation of the letters testamentary of the executor.

On March 16th, 1910, both these petitions were answered by the executor who denied the right of the petitioners to take such proceedings on the ground that it appeared from their own admissions that most of them were not next of kin, and that the requirements of section 336 of Article 93

of the Code had been fully complied with, and that the Orphans' Court had so decided.

On March 29th, 1910, the purchaser excepted to the ratification of the sale, on the ground that the title was not good and marketable (1) because of the pendency of said caveat, and (2) because of the pendency of the petition to revoke the executor's letters testamentary, neither of which have been heard and determined. The record contains an agreement of counsel that the exceptant had been notified that none of the petitioners are willing to abide by or consent to the ratification of the sale which was ratified by the Court on April 1st, 1910.

We have recited all the proceedings in their order, merely as the brief history of the whole case, but the only question for our decision, is whether, if the order ratifying the sale be affirmed, the appellant will take such a title to the property in question as would enable the appellee to enforce in equity the specific performance of his contract of purchase.

The appellee contends that he will, because he alleges that both under the statutes of this State and the express decisions of this Court, the validity of the sale does not depend on the action of the Orphans' Court, either on the caveat or the subsequent petitions above mentioned, and that the sale would stand even though the letters testamentary of the executor be revoked, or the will should be declared invalid. Section 36 of Article 93 of the Code declares that, "all acts done by any executor or administrator according to law, before any actual or implied revocation of his letters, shall be valid and effectual," and it further provides in detail that any executor or administrator obtaining letters after a revocation, shall succeed to all the rights, and be subject to all the liabilities, of the executor or administrator whose letters shall be revoked, depending upon any act done according to law by such executor or administrator before such revocation.

Section 341 of Article 93 provides: "If the probate of any will or codicil be taken as aforesaid without contest, any person, *before* letters testamentary or of administration with a copy of the will shall be actually granted, may file a petition to the Court praying that the case be again examined and heard; and thereupon the Orphans' Court shall delay the granting of letters until a decision shall be had on the petition; and *in case* the letters shall have been granted, and any person shall file such petition, and the Court on hearing both sides, that is to say, the petitioner and the grantee of such letters, shall decide against the probate, the letters aforesaid shall be revoked, and the power of the party under the letters shall cease; and the said will shall not be proved in any other county, unless the decision be reversed on appeal." It will be noticed that the only condition upon which the powers of the party under letters testamentary, or of administration *c. t. a.* here stated is that the Orphans' Court, upon the hearing shall decide against the probate; until such decision is made, the letters continue in full force.

Section 35 provides that where administration shall be granted, and afterwards a will is proved, and letters testamentary are granted, this shall be deemed an implied revocation of the letters of administration though no express order of revocation is made.

Sections 341 and 36 of Article 93 have received a settled construction under decisions of this Court. In *Munnikhuysen* v. *Magraw,* 35 Md. 280, the will of Emily W. Magraw was admitted to probate in common form, without contest, and letters testamentary were granted to Howard Munnickhuysen and Adam R. Magraw, the two executors named in the will. Thereafter a caveat was filed by other parties claiming under the will praying that the probate be annulled and the letters testamentary be revoked. One of the executors, Adam R. Magraw, answered and asked to be allowed to unite in the caveat and petition. The other executor answered denying all the allegations. Issues were framed and

sent to the Circuit Court on March 15th, 1871, and on March 29th, 1871, other issues were prayed by Munnikhuysen and were refused by the Court and he appealed from both these orders, and both these orders were reversed on appeal. Subsequent to this reversal Adam R. Magraw was on his petition appointed administrator *pendente lite* of Emily W. Magraw, and from that order Minnikhuysen appealed. This order was also reversed, Judge Bartol saying: "The Orphans' Court seem to have proceeded upon the opinion that the effect of the caveat and sending the issues for trial, was to suspend the operation of the will, and the powers of the executors thereunder, and that the case had arisen provided for by the Code, Article 93, section 68 (now sec. 67) whereby the Orphans' Court is authorized, when the validity of a will is contested, to appoint an administrator pending the contest. In this view that Court was clearly in error. That section applies to cases where the will has not been admitted to probate, or where letters testamentary have not been granted, or if granted, have been revoked. * * * The effect of such an order would be to create the greatest confusion in the administration of the estate, for there would be different and opposing parties, both clothed with the powers of administration at the same time. The effect of the caveat and the proceedings was not to revoke the probate, or suspend the powers of the executors. These remain to await the final action of the Orphans' Court, after the trial and verdict upon the issues."

In *Stanley* v. *Safe Deposit Co.,* 88 Md. 401, secs. 327 and 328 of Article 93 (now secs. 337 and 338) were construed by the Court, Judge Boyd saying: "Sections 327 and 328 do not contemplate a formal notice such as a summons, or something in the nature of an order of publication, as section 329 provides for that character of notice in event of the other not appearing to have been given, but they refer to a notice to be given by the executor or other person exhibiting the will to the Court for probate, and *if it appeared to the Court*

that such reasonable notice was given, as provided for in section 327, it unquestionably had jurisdiction to proceed to take probate of the will. Having the jurisdiction to decide that question, and having decided it as we must presume it did unless we assume that it wholly disregarded the express provisions of the law, which we would not be justified in doing, its decision cannot be reviewed in the way now attempted. * * * It was never contemplated by our statute that issues could be allowed on such a question as this, after the Orphans' Court had, in the exercise of its jurisdiction, determined the question, and while its order admitting the will to probate remained unrevoked. * * * When the sections referred to say that *if it shall appear* that reasonable notice has been given, they clearly mean, *if it shall appear to the Orphans' Court* to which the will is exhibited for probate, and it was never intended that a jury should determine whether it so appeared to the Court." The appellant has presented a strong and able argument which we have read with care, and have examined all the authorities cited by him. The pith of his argument is, as stated in his brief:

"1. That the authority or duty of an executor, who is also the donee of a power, to exercise that power is entirely separate and distinct from his authority or duty as executor of the estate; 2. That the validity of an attempted exercise by the executor as donee of the power must depend upon the validity of the instrument creating that power."

Notwithstanding the statutory provisions to which we have referred, and which are very broad, these propositions of the appellant would require serious consideration at our hands but for the fact that we regard them as in conflict with the decision of this Court in *Seldner* v. *McCreary*, 75 Md. 287. In that case certain real estate was sold by the executors of Eva Seldner, deceased, *under a power of sale given to them by her will*. The purchaser alleged that the title was defective and refused to accept and pay for the land. A bill in

equity was filed by the executors for a specific performance
of the contract of sale, and the Court below passed a *pro
forma* decree dismissing the bill, which decree was reversed
on appeal. The Court in the course of the opinion, used the
following language: "One of the objections urged to the
title is that as Mrs. Seldner's will was proved in common
form, it may hereafter be caveated, and the purchaser would
thus be involved in litigation. When the probate of the will
was made and letters testamentary duly granted the executors
had as full powers of administration as the law could under
any circumstances give them. It is said that the probate
might hereafter be annulled and the letters revoked. *But
until this occurence shall take place, the probate and grant
of letters by the Orphans' Court must stand and be effect-
ual.*"

Pausing here a moment, it must be observed that that the
*"Occurence"* of which the Court here speaks is not the *filing*
of a caveat, as the argument of the appellant apparently as-
sumes, but the *determination* of a caveat filed, by a judg-
ment annulling the probate and logically requiring the ex-
press revocation of the letters testamentary. That this is the
meaning of the Court appears from the language which im-
mediately followed that which we have quoted above, and
which we now give: "The administration of estates of de-
ceased persons must not be delayed by the suggestion of
future contingencies of this kind. *The powers committed to
executors in this solemn form would be of no avail,* if they
are required to forbear the exercise of them for the reason
that in some possible future event they may be withdrawn.
The business of the Orphans' Court could not be conducted
on such a basis. *The statute has provided differently* * * *
*Sales duly made by an executor under a power given by a
will would be good.* And no one would be damnified by such
sales; they would merely effect a change in the form of the
property; the proceeds of the sales would go into the hands
of the executor in the shape of money. In case of a revoca-

tion of his letters, they would be turned over to his successor in the trust of administration to be distributed in the manner which should be decided by law." The attention of the Court was drawn to the case of *Emmert* v. *Stouffer.* 64 Md. 543, which is one of the cases chiefly relied on here by the appellant, but it did not control or alter the view of the Court, because as the Court said: "The Orphans' Court had refused probate of an alleged will under circumstances which deprived their adjudication of all validity." In that case, the Court refused to compel a purchaser of real estate *from the heirs at law,* to take the property, because the proceedings did not prevent the will from being propounded and probated in the future. There was a legal presumption arising from the propounding of the will that it was a genuine and operative instrument, and therefore as the Court said: "The will was a standing menace to purchasers and a warning that the title of the heirs at law was liable to be defeated by a probate."

Notwithstanding that a caveat has in this case been actually filed before ratification of the sale there is no presumption it will be sustained. On the contrary the presumption of the validity of the will is not removed or weakened in legal contemplation by the filing of the caveat. The exercise by the executor of the power of sale of real estate under a will, is as distinctly, "an act done according to law," as any other act which the executor is authorized by law to perform, and it was that specific act which the Court in *Seldner* v. *McCreary, supra,* held to come within the true construction of section 36 of Article 93 of the Code.

We are constrained to regard that case as conclusive of the present case and the order of the Orphans' Court will therefore be affirmed, but we shall direct the costs to be allowed out of the proceeds of sale.

> *Order affirmed, costs to be allowed out of the proceeds of sale in the hands of the executors.*