## BENJ. N. PARKER et al.

### vs.

## BENJ. F. LEIGHTON et al., Executors.

*Letters testamentary: form of——.   Wills: form of——; probate;
judgments; notice to relatives; sufficiency; time for objec-
tions.   Register of wills: power of——; taking deposi-
tions; certificates. Wills: caveats, adverse findings;
effect on Acts by executors; sales and pay-
ment of legacies.   Administrators: debts
and taxes, proof of——.   Trustees: com-
missions; employment of agents.
Executors: duty to defend
will; powers of sale.*

The mere fact that letters testamentary are not precisely in
the form provided by sec. 51 of Art. 93 of the Code, does not
invalidate the proceedings of the executors.          pp. 412-413

The notice of the probate of a will required by secs. 343-4 of
Art. 93 to be given the near relatives of the testator, is not
such a formal notice as that for a summons or for an order of
publication.                                               p. 413

On objections raised in the Court of Appeals to the probate
of a will on the ground of want of sufficient notice, it will be
presumed that the action of the Orphans' Court, in admitting
the will to probate, was correct unless it appears by the record
that there was such insufficiency of notice.               p. 415

Under sec. 350 of Art. 93 the Register of Wills, or his
deputy, is authorized to take the depositions of witnesses to a

will, within or without the State, who can not conveniently attend at the Office of the Register, when directed so to do by the Orphans' Court; and the proof as taken is as valid as if all the witnesses had appeared before, and been examined by the Orphans' Court for the Register.                    p. 414

Objections to a will on the ground that proper notice of probate was not given must be made within a reasonable time after knowledge of such want of notice was acquired, and by analogy with the time for appeals from orders of Orphans' Courts, they should be made within thirty days.                    p. 415

Where the certificate of the Register of Wills declared that the two subscribing witnesses to a will had appeared before him and "in the presence of Almighty God," etc., "declared that they were present and did see the testator sign and seal this last will and that they heard him publish and declare the same to be his last will, etc.," and that at the time of his so doing "he was to the best of their apprehension of sound and disposing mind," etc., and that they respectively subscribed their names as witnesses in the presence of the testator and at his request and in the presence of each other, it is a sufficient compliance with sec. 350 of Art. 93 of the Code.                    p. 412

There is no particular form in which a judgment of probate must be expressed. It is sufficient if it appears from the minutes of the Court that the will was proved and allowed, and no final decree is necessary.                    p. 413

In general, the mere fact that on issues sent from an Orphans' Court, the finding of the jury is against the validity of the will, is not sufficient to justify treating the executors as convicted of fraud and bad faith in having procured the probate of the will.                    p. 416

And such finding of the jury is not of itself sufficient grounds for refusing the executors the expenses of the probate.    p. 416

Where a will is admitted to probate before caveat, it is the right and duty of the executors to defend it; and they are allowed for attorney's fees, costs, etc.; and their right to such allowance does not depend upon the result of the caveat.

p. 417

The mere fact of a mistake in the name of a legatee in a will is not evidence that the will was not read to the testator after its execution, especially when the jury finds that the testator was not mentally capable of making a will.          p. 418

Under sec. 36 of Art. 93 of the Code, acts done by an executor or administrator, according to law, before any actual or implied revocation of the letters, are valid and effectual.          p. 418

Taxes are not required to be passed by the Orphans' Court or proven as ordinary debts, as required by statute to be passed.
          p. 419

But executors or administrators have no right to pay other claims against the decedent unless proved according to law, even though they are themselves satisfied as to their correctness.
          p. 420

Where a will constituted the executors trustees for certain trusts, with power to sell the real estate thereby devised, sales made by them as such trustees before the will was declared invalid, before any caveat was filed and before the letters are revoked, are not to be held as invalidated by a successful caveat to the will.          pp. 419-420

Where a Court of Equity had not assumed jurisdiction of the trust, and the executors were also the trustees under the will, it was held that there was no objection to the executors and trustees settling their accounts in the Orphans' Court.          p. 420

In such a case if the trustee had authority to make the sale (even though the will was afterwards found invalid) they are entitled to their commissions.          p. 421

The executors in such a case are to be allowed for annuities as they have paid according to the direction of the will, before the same had been found invalid and set aside.          p. 421

Where a will provided for the payment to trustees of a commission of 5% for the administration of the trust, they can not be allowed such commission on the net rents after they have allowed a commission to the agent who actually made the collections for them.          p. 422

While the Orphans' Court are courts of limited jurisdiction, they have, under sec. 235 of Art. 93 full power to direct the

410        PARKER *vs.* LEIGHTON.

conduct and accounting of estates of intestate, secure the rights of orphans and legatees, and administer justice in all matters relating to the affairs of deceased persons.        p. 423

Where executors are also trustees, under the will, with power to sell the real estate,—sec. 287 of Art. 93 of the Code, referring to sale by executors, and the necessity for the authority of the Orphans' Court, do not apply.        p. 420

*Decided November 14th, 1917.*

Appeal from the Orphans' Court for Montgomery County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Daniel T. Wright* (with whom were *J. Morris Wampler* and *W. Outerbridge Spates* on the brief), for the appellants.

*C. W. Prettyman* and *George Francis Williams,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Montgomery County ratifying an account filed by the appellees as executors and trustees under the will of Charles H. Parker, deceased. The record shows that a caveat to that will was filed by Benjamin H. Parker, Mareb R. McKimmie and Mable T. O'Donnell, three of the appellants, who together with Thomas C. Parker and Grace M. Heiston, the other appellants, are five of the nine children of Charles H. Parker. Eva J. Turner, formerly Eva J. Dolan, one of the

appellees, and three minors are the other children. Four
issues were framed and sent to the Circuit Court for Mont-
gomery County, which, as abbreviated, were as follows: 1.
Did the testator execute the paper writing purporting to be
his last will and testament in accordance with the form re-
quired by the laws of Maryland? 2. Were the contents of
the paper writing read to or by the said Charles H. Parker,
or known to him at or before the time of the alleged execution
thereof? 3. Was he at the time of the execution of the paper
writing of sound and disposing mind and capable of execut-
ing a valid deed or contract? 4. Was the execution of the
paper writing procured by undue influence exercised and
practised upon said Charles H. Parker?

On December 22nd, 1916, a jury found in favor of the
caveators on the first, second and third issues, and in favor
of the caveatees on the fourth issue. An appeal was taken
by the caveatees, but it was dismissed by them on February
24th, 1917. The verdict was certified to the Orphans' Court,
which on March 8th, 1917, passed a decree in accordance
with the verdict on the issues, that the paper writing "is not
the last will and testament of the said Charles H. Parker
and probate thereof is hereby revoked." The decree also
provided that all costs of that Court and of the Circuit Court
for Montgomery County arising out of the framing, trans-
mission and determination of the issues be paid out of the
estate of the deceased.

On March 8th, 1917, an account of the appellees as execu-
tors and trustees was filed in the Orphans' Court and objec-
tions to it were filed by the appellants, which were overruled
and the account was ratified. From that action of the Court
this appeal was taken. It is contended by the appellants: 1.
That the evidence offered by them, which was rejected, showed
the absence of jurisdictional facts, the existence of which was
essential to the jurisdiction of the Orphans' Court in making
an order of probate; that the order of probate was therefore
void and the will was never probated, and hence the executors
can not be allowed the expenses of defending the caveat, or

other items of the account. 2. That the evidence offered
tended to show that the appellees knew that the alleged will
was false and not entitled to probate; that they acted in bad
faith, undertook to establish as a genuine will a paper which
they knew to be false, and therefore can not be allowed the
account or the items thereof.

*First*—It appears from the record that Charles H. Parker
died August 12th, 1915. On the 18th of that month Ernes-
tine F. Terflinger made an affidavit as to the custody of the
will, that she obtained it from B. F. Leighton, attorney for
the decedent, on or about the 14th of August, 1915. On
September 10th, 1915, a certificate of the Register of Wills
was made and filed that the two subscribing witnesses to the
will had appeared before him "and in the presence of Al-
mighty God, solemnly and truly declared that they were pres-
ent and did see the testator therein named sign and seal this
will, that they heard him publish, pronounce and declare the
same to be his last will and testament, that at the time of
his so doing he was, to the best of their apprehension, of
sound and disposing mind, memory and understanding, and
that they respectively subscribed their names as witnesses to
this will in the presence of the testator, at his request, and all
in the presence of each other."

On the 16th day of September, 1915, the Orphans' Court
passed an order admitting the will to probate.

It appears therefore from the record that the Court ad-
mitted the will to probate and although there was some crit-
icism at the argument of the form of the certificate of the
register as to proof by the witnesses, it was a sufficient com-
pliance with section 350 of Article 93 of the Annotated Code.
On September 28th, 1915, the Court approved the bond pre-
sented by the appellees and ordered that letters testamentary
be granted to them upon taking the usual oath. Some objec-
tion was made that letters testamentary were not issued in
the form prescribed by section 51 of Article 93, but there is
a certificate of the register that letters testamentary were
issued, and the mere fact that they were not precisely in the

form prescribed by that section could not invalidate or effect the proceedings of the executors. In *Decker* v. *Fahrenholtz,* 107 Md. 515, it was said: "The statutes in this State do not prescribe any particular form in which the judgment of probate shall be expressed, nor do the statutes elsewhere so far as we are informed. In 16 *Enc. Pl. & Pr.* 1043, it is said to be sufficient if it appear from the minutes of the Court that the will was proved and allowed, and that a formal judgment or decree admitting the will to probate is not necessary." In this case there was a formal decree, but we quote the above to show the position this Court has taken with reference to proceedings in the Orphans' Court.

Coming then to the question whether the omission to show that some of the "next relations of the deceased" attended or that notice appears to have been given affected the jurisdiction of the Court to grant the probate, we find nothing in the record to show that such notice as is contemplated by the statute was not given to some of the next relations of the deceased. In *Stanley* v. *Safe Deposit Company,* 88 Md. 401, we said that sections 327 and 328 (now sections 343 and 344) of Article 93 do not contemplate a formal notice such as a summons or something in the nature of an order of publication, as section 329 (now 345) provides for that character of notice in the event of the other not appearing to have been given, "but they refer to a notice to be given by the executor or other person exhibiting the will to the Court for probate, and *if it appeared to the Court* that such reasonable notice was given as provided for in section 327 (343), it unquestionably had jurisdiction to proceed to take probate of the will. Having the jurisdiction to decide that question, and having decided it, as we must presume it did unless we assume that it wholly disregarded the express provisions of the law, which we would not be justified in doing, its decision can not be reviewed in the way now attempted." We held in that case that it was not a proper matter for issues as the law conferred jurisdiction on and imposed the duty on that Court to determine that preliminary question.

We will not quote the proffer of the appellants to prove certain facts by the Register of Wills, but we have examined that proffer very carefully and find that it falls far short of negativing what was said to be sufficient in *Stanley* v. *Safe Deposit Co., supra.* Everything contained in that proffer may be true and still the executors may have informed some of the near relations that the will would be offered for probate at the time it was.

Although section 343 of Article 93 authorizes the Register of Wills to take the probate of a will in the recess of Court, this will was admitted by the Orphans' Court itself under section 344. The Register of Wills under and by virtue of section 350 took the "deposition," as it is called in that section, of the two subscribing witnesses, which he or his deputy, when directed by the Orphans' Court, is authorized to do wherever he may find witnesses to a will who can not conveniently attend at the office of the register, whether within or without the State, and the proof so taken is as valid as if all the witnesses had appeared before and been examined by the Orphans' Court for the Register. That having been done in this case the Orphans' Court admitted the will to probate as shown above.

In reference to the question of notice to the next relations the case of *Lederer* v. *Johannsen,* 124 Md. 453, is conclusive. In that case Mrs. Parker was appointed executrix and Paul Johannsen executor of Mrs. Lederer. The question of notice was raised—the appellant contending that notice was not given to him and that without it the Orphans' Court had no jurisdiction to admit the will to probate. JUDGE THOMAS quoted in full sections 343, 344 and 345 of Article 93 of the Code, and on page 459 said: "The facts of this case bring it clearly within the provisions of sections 343 and 344. Mrs. Parker, who was one of the daughters of the deceased, and, therefore, one of 'the next relations of the deceased' was present in the Orphans' Court when the will was offered for probate. The language of section 344 is 'any of the next relations of the deceased,' and no exception is

made in case such relation happens to be the executor or
executrix, or a witness to the will.   As Mrs. Parker was
present when the will was exhibited in the Ophans' Court,
and as no caveat or objection was filed, the Orphans' Court
was authorized to admit the will to probate without it being
made to appear that reasonable notice had been given to the
near relations of the deceased of the time when the will would
be exhibited in that Court."   That would seem to be conclu-
sive of the question, but another reason may be given which
is equally so.   It will be remembered that this contest is
raised by objections to the account of the executors and trus-
tees filed after the will had been set aside as the result of the
caveat.   In *Stanley* v. *Safe Deposit Co.,* 88 Md. 401, it was
held, quoting from the syllabus for convenience, that: "When
a party attacks the probate of a will on the ground that notice
thereof had not been given to near relations as required by
statute, he must file his petition within a reasonable time
after acquiring knowledge of that fact, and, in analogy with
the time limited for taking appeals from orders of the
Orphans' Court, this should be within thirty days after the
grant of probate."   In considering the question we said what
is very applicable to the appellants in this case who filed a
caveat, that "the facts as to notice were as much within the
knowledge of the appellants when they filed the original
caveat to the will, as they were when they filed this petition,
as they knew whether they were present or had notice that
the will would be offered for probate."

It is therefore thoroughly established that the will was
admitted to probate and the validity of the probate is not an
open question.   That conclusion reached by us disposes of
many of the objections urged by the appellants---particularly
as to the items of expense connected with the trial of the
caveat.   Before taking up the items in the account which
are objected to, it will be proper however to consider the sec-
ond of the main contentions of the appellants stated above,---
as to the alleged bad faith of the appellees in procuring the

probate of the will which they knew to be false, and hence can not be allowed the account or the items thereof.

The evidence in the record and that offered to be proven are not sufficient to sustain that charge. The only authority in this State cited by the appellants is *Pleasants* v. *McKenney,* 109 Md. 277, it being said on page 292, that: "Whether all persons interested in the will are actual parties or not, the finding of the jury is binding and conclusive upon them as to all questions covered by the issues actually submitted to the jury for its determination." That is a well established principle of law, but to hold that because a jury found for the caveators on such issues as those in this case, the executors are to be treated as convicted of fraud and of having acted in bad faith in procuring the probate of the will is not sustained by any decision in this State, if there be any elsewhere. Everyone familiar with the trials of caveats to wills knows how difficult it is to prevent the jury from being influenced by their own ideas of what the testator should have done. Sometimes the jury will be influenced by the eloquence of the attorneys, and at other times they may be deceived by witnesses, but whatever the reasons for their verdict may be, it should not be given such effect as is sought to be given it in this case. As to the first issue the witnesses to the will swore to such facts as apparently showed it to have been executed in accordance with the form required by the laws of Maryland, yet the jury found in the negative. Those witnesses also swore as to the capacity of the testator to make a will. Are they to be condemned as perjurers or guilty of fraud because the jury found contrary to their statements?

But the question is settled in this State. In *Glass* v. *Ramsay,* 9 Gill, 456, one of the issues was whether the execution of the paper was procured by fraud or fraudulent misrepresentations of the executors, or either of them, or by others acting for them or by their direction. The jury found in favor of the caveators, and the probate of the will and letters testamentary were revoked. The executors then exhibited an account, in which they claimed an allowance for counsel fees,

costs and expenses incurred by them in support of the will, and also commissions. The Court said that: "It is certainly true that this finding of the jury is to be treated as conclusive with respect to all questions touching the validity of the will. * * * But when upon a new and different issue, founded on a claim for costs and expenses incurred by the appellees in the discharge of the duties imposed upon them as executors by the letters testamentary, the finding of the jury upon the caveat is collaterally introduced to affect the propriety or legality of such claims, it is like all other evidence of that character, open to explanation." The Court then went on to say that "taking the depositions furnished by the counsel of the caveators, or the trial before the Orphans' Court, into consideration, the conduct of Hugh Jenkins, one of the executors, is relieved from all imputation of fraud, so that the order of the Orphans' Court, allowing to the appellees counsel fees and costs, is covered by the opinion of this Court in the case of *Compton v. Barnes,* 4 Gill, 55." The Court also said that there was no ground for disputing the correctness of the order of the Orphans' Court allowing commissions to the appellees.

It is settled by a long line of decisions in this State that when a will is admitted to probate before the caveat, it is the right and duty of the executors to defend the will, and they are allowed for attorneys' fees, costs, etc. *Compton v. Barnes, supra; Townshend v. Brooks,* 9 Gill, 90; *Glass v. Ramsay, supra; Miller v. Gehr,* 91 Md. 709, and others might be cited. They have never been made to depend upon the result of the caveats. In the case of *Kengla v. Randall,* 22 Ap. D. C. 469, cited by the appellants, the will had not been admitted to probate when the caveat was filed, and there is nothing in the case of *Tuohy v. Hanlon,* 18 Ap. D. C. 225, contrary to our conclusion.

In this case the verdict on the issue of undue influence was in favor of the appellees, which of itself would go very far towards exculpating them. The attorneys for the appellants laid great stress on the fact that by the fifth clause of

the will there was left to William Parker, a nephew of the
testator, a farm in Chester County, Pa., for life "and upon
his death, the remainder in fee to his brother, William
Parker," but such a mistake does not seem to us to have the
significance that they attach to it. The attorney who pre-
pared the will did not notice it, and it was just one of those
mistakes which sometimes occur. If, as the jury found, the
testator was not mentally capable of making a will, his fail-
ure to notice a mistake of that kind, if the will was read to
or by him, would not be strange.

*Second*—The conclusion reached by us as to the probate
of the will disposes of the appellants' objections to many of
the items. By section 36 of Article 93 it is provided that:
"All acts done by any executor or administrator according to
law, before any actual or implied revocation of his letters,
shall be valid and effectual." In *Pacy* v. *Cosgrove's Execu-
tor,* 113 Md. 315, where a will had been admitted to probate
in common form without contest, a sale of real estate by the
executor in pursuance of a power in the will was held to be
valid, although a caveat was then pending. In passing on
the questions raised by the objections to the account, which
we will now do, that section and the decision in *Pacy* v. *Cos-
grove's Executor* must be kept in mind.

The expenses connected with the trial of the caveat were
properly allowed in accordance with the cases cited above,
unless there be some items objectionable on other grounds.
The account of Vernon Beall for $27.93 is perhaps the most
questionable of the items connected with the trial, but it was
not an unreasonable payment to make if Beall sustained the
loss in an effort to aid the caveatees. There was no reversi-
ble error in the allowance of any of the other items connected
with that trial, and as there are objections to so many items
of the account we can not attempt to discuss or refer to each
one separately. There can be no doubt about the correctness
of the items connected with the probate of the will, the fun-
eral expenses and the physician's bill. Nor is there any
ground for objection to the commissions on the personal

property. The amount allowed was within the discretion given the Orphans' Court by the statute. There can be no question about the taxes paid and allowed in the account. Taxes are not required to be passed by the Orphans' Court or proven as provided by the statute. *Bonaparte* v. *State,* 63 Md. 465.

There are a number of small bills, amounting in all to about $200.00 which we understand to be claimed to be debts due by the deceased. It was agreed by counsel in the Orphans' Court that none of them were supported by formal proof or affidavits, or passed by the Orphans' Court. Section 83 of Article 93 provides that: "No administrator shall discharge any claim against the decedent (otherwise than at his own risk) unless the same be first passed by the Orphans' Court granting the administration, or unless the said claim shall be proved according to the following rules." Sections 84 to 96, inclusive, relate to the kind of proof required for different claims, and then section 97 provides that: "No administrator shall be allowed in his account for any claim discharged by him unless he produce the claim passed by the Orphans' Court, or proven as herein directed." It was said in *Bowie* v. *Ghiselin,* 30 Md. 553, that "The objects of these provisions are two-fold; to secure the estates of deceased persons from unjust and unfounded claims by requiring them to be supported by vouchers and proof; and also to protect the executor from liability where he honestly pays a claim which has been approved and passed by the Court." It was suggested by the appellees' attorneys that as no objection was pointed out to any of those claims, beyond the fact that they were not passed or proven, the decree of the Orphans' Court ratifying the account should not be disturbed, but the difficulty is that the language of the statute is imperative. The appellants objected to them on that specific ground, and their objection was overruled, although it was conceded that none of them had been passed or proven. Persons interested in estates may not know whether claims are correct, and have the right to require the proof provided for by law, and not merely

to depend upon the administrator or executor being satisfied 'that they are justly due. When the question was raised in the Orphans' Court evidence might then have been produced sufficient to enable the Court to pass them, or proof might have been obtained in accordance with the statute—for which purpose an adjournment of the proceedings could have been had, if necessary. The testamentary laws of the State are not intended to take undue advantage of administrators and executors, and where such defects as these exist they should have the opportunity to correct them, if they can, but it would be setting a dangerous precedent to allow these claims although not passed or proven. Of course the sections referred to do not apply to debts incurred by the executors in the course of the administration or in defense of the caveat to the will, but only to claims against the decedent. There was error, therefore, in allowing the claims against the decedent which had not been passed or proven.

*Third*—It is contended that the executors had no right to sell the real estate in Washington, referred to in the account, because they had not been authorized to sell it by the Orphans' Court, and the will did not authorize them to sell it without obtaining that authority. The appellants rely on section 284 of Article 93, and the decision in *Brooks* v. *Bergner,* 83 Md. 352, which construes section 287 of Article 93 to mean that the will must state that the executor shall have power to sell without obtaining an order of the Orphans' Court. But those provisions of the Code have no application to the sale in question, as we understand the record. It was made by the appellees as trustees, not as executors, and they were clearly authorized by the will to sell as trustees. The record is very meager as to the sale, but it was made as early as August 24, 1916, as the note secured by a deed of trust bore that date according to the account. The testator died in August, 1915, and the will was probated September 16, 1915. The caveat was not filed until September 12, 1916, and the verdict of the jury was rendered December 22, 1916, but the will not declared invalid and the letters revoked until March 8th, 1917. The

sale was therefore made while the will was in effect, and even before the caveat was filed. Having made the sale it was the duty of the trustees to account for the proceeds, and as, so far as shown by the record, jurisdiction of the trust had not been assumed by a Court of Equity, and the executors had not yet settled their account, there can be no valid objection to their settling it in the Orphans' Court. It purports to be an account of the appellees as executors and trustees. As they had authority to sell the property, no objection to the allowance of the commission on the sale can be sustained.

The testator left in his will an annuity of $25.00 a month to Miss Iva Van Horn during her lifetime, and directed his executors and trustees to pay said annuity quarterly from the time of his decease. He also left to Eva J. Dolan, who is now Mrs. Turner, one of the appellees, a house in Washington "for a home for herself during her life and my three minor children" until the youngest arrived at the age of twenty-one years or was married, and he also left to her and each of the three minor children $75.00 per month until the youngest became of age, to be paid to Mrs. Dolan for herself and as testamentary guardian of the minor children, for her maintenance and support, and the maintenance, support and education of the minor children. The testator appointed Mrs. Dolan testamentary guardian of the minor children. In the account the appellees ask credit for the payment of those sums to Miss Van Horn, Mrs. Turner and Mrs. Turner, guardian. Those payments continued until August, 1916, and we can see no objection to them; nor to the distribution to each of the nine children in accordance with the provisions of the will leaving the rest of the income to be divided between them until the youngest became of age.

There can be no objection to the allowance of commissions on the rents, as the will provides for them. The appellants, however, ask that the appellees be charged with $667.20 under the following circumstances. The decedent owned sixty odd houses in the City of Washington. He had organized a real estate company known as the C. H. Parker Com-

pany, but sold his interest in it to Mrs. Turner, excepting one share which he retained as he remained president of the company until his death. Mrs. Turner then owned all except two shares, and the one formerly held by her father was bought by Benjamin H. Parker, one of the appellants, who became president, and Mrs. Turner was secretary and treasurer of the company. The company had charge of Mr. Parker's real estate in Washington at his death, and continued in charge of it afterwards. It collected the rents, made the repairs, etc. It continued to charge five per cent. for its services—three per cent. of which was paid to Benjamin H. Parker and the remaining two per cent. to Mrs. Turner. The testimony shows that Benjamin H. Parker attended to the outside matters and Mrs. Turner to those in the office, keeping accounts, etc. The company would deduct the five per cent. commissions, the amount paid for repairs, etc., and send to Mr. Leighton the net amount. The amounts charged in the account are the net sums paid over by the company, and on these the appellees have charged five per cent. commissions. They contend that the will authorized them to adopt that course, but we do not so understand it. The will provided that the trustees should collect the rents, issues and profits, and manage and control the property, as they may deem most for the interest and advantage of the beneficiaries of the will. It provided that out of the rents, issues and profits they should pay all reasonable costs and expenses attending the management of the property and the collection of rents, "including a commission of five per centum to themselves for administering said trust." From the net residue of the income they were directed to pay the taxes, make such repairs as they deemed necessary and keep the property insured. It would seem to be clear that the testator expected the trustees to perform the services which they employed the company to do for the five per cent. commissions, and they were not entitled to pay commissions to that company, and then get five per cent. themselves.

But Benjamin H. Parker, one of the appellants who are now asking that the appellees be surcharged with the amount so paid, received three-fifths of the commissions deducted from the rents collected by the company, and he should be required to return what he received. Mr. Leighton got no part of that, and it would be a great injustice to hold him responsible for it at the instance of Benjamin H. Parker and his co-objectors, while Parker retains three-fifths of it. The Orphans' Court is a Court of limited jurisdiction, but it is not without all power to do justice. By section 235 of Article 93 it is provided that, "The Court shall have full power to * * * direct the conduct and accounting of executors and administrators, superintend the distribution of estates of intestates, secure the rights of orphans and legatees, *and administer justice in all matters relating to the affairs of deceased persons,*" etc. Section 236 provides that: "The Orphans' Court shall have full power, authority and jurisdiction to examine, hear and decree upon all accounts, claims and demands existing between wards and their guardians, and between legatees or persons entitled to any distributive share of an intestate's estate and executors and administrators, and may enforce obedience to and execution of their decrees in the same ample manner as the courts of equity in this State." The uncontradicted evidence, offered by the appellants themselves, is to the effect that Benjamin H. Parker did receive three-fifths of these commissions for which he and his co-objectors now seek to hold the appellees, and it would be manifestly unjust to charge the appellees with what he has actually received—especially at the instance of him and his co-objectors.

Under the peculiar circumstances we are of the opinion that the Orphans' Court should refuse to surcharge the account and charge the appellees with the amount asked for in the motion of Benjamin H. Parker and his co-objectors, and should overrule that motion, unless said Parker pays or secures to the appellees the three-fifths received by him within such time as the Court may fix. As the other four appellants

have united with him in the motion, they are asking the Court to do what would manifestly be unjust unless he does pay back or secure the money. Of course the Court should require Mrs. Turner to return the two-fifths retained by her, so as to protect her co-trustees.

It follows that the decree ratifying the account must be reversed in part and affirmed in part. An opportunity to furnish proper proof of the items objected to as not passed or proven should be given, and such as are satisfactorily proven should be allowed. We will reverse the decree of the lower Court in so far as the claims not proven or passed were allowed and in regard to the commissions on the rents paid the C. H. Parker Company, and will affirm it in all other respects. We will direct that each side pay one-half of the costs of transmitting and printing the record, and that they pay their own costs except those.

> *Decree reversed in part and affirmed in part,*
> *and cause remanded for further proceed-*
> *ings in accordance with this opinion. Each*
> *side to pay one-half of the costs of trans-*
> *mitting and printing the record, and to pay*
> *their own costs outside of those.*