757 A.2d 812

Barbara M. RADCLIFF

v.

Robert B. VANCE, Personal Representative of
the Estate of James Franklin Vance.

No. 118, Sept. Term, 1999.

Court of Appeals of Maryland.

Aug. 21, 2000.

Edmond B. O'Connell, Upper Marlboro, for Appellant.

Timothy P. O'Brien (Cary J. Hansel of Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

Appellant, Barbara Radcliff, an attorney in private practice in Prince George's County, applied to the Orphans' Court for Prince George's County for payment of a bill for legal services. The personal representative of the estate of James Vance paid the bill after the Orphans' Court ordered payment. The bill was subsequently contested by an interested party of the estate, and the Orphans' Court ordered Appellant to repay the money to the estate. Radcliff noted an appeal to the Court of Special Appeals and this Court granted certiorari on its own motion before consideration by that court. We shall affirm the judgment of the Orphans' Court.

On August 4, 1998, Appellant filed a Motion for Order for Payment of a Debt in the Orphans' Court for Prince George's County. She alleged that as a creditor of the estate of James Franklin Vance, who died on August 6, 1997, she was entitled to payment of costs and fees from the proceeds of the estate in the amount of $17,375.00 for services she rendered to the decedent prior to his death. The only person served with this motion was Robert B. Vance, the personal representative of the estate. On September 8, 1998, Orphans' Court Judge Angelo I. Castelli signed an order granting the motion.

Elizabeth E. Vance, Appellee, the third wife of decedent, first learned of the motion and order when her counsel reviewed the Register of Wills file on November 13, 1998. On November 19, 1998, she filed a petition in the Orphans' Court, praying (1) that the court vacate the order of September 8, 1998, and (2) that the court direct Radcliff to return the funds to the estate. On December 11, 1998, the Orphans' Court vacated the September order, and further ordered that Radcliff return the funds to the estate. Radcliff moved the Orphans' Court to strike the December 11, 1998 order on the grounds that she was a creditor of the estate who had submitted a valid claim that was paid by the personal representative. She argued that payment of the claim by the personal representative ended any jurisdiction the court may have had over the subject matter, and that the Orphans' Court

never had personal jurisdiction over her. Radcliff noted an appeal to the Court of Special Appeals from the denial of her motion to strike the order. We granted certiorari on our own motion before consideration by that court.

There is no real dispute as to the facts of the case. James F. Vance, the decedent, was married to Elizabeth E. Vance on June 30, 1989. In 1995, James Vance became ill and was hospitalized; he was diagnosed with dementia and was admitted to a veterans' home. On or about June 6, 1996, while James was at the veterans' home, Elizabeth Vance filed a petition for guardianship of the person and the property of James F. Vance in the Circuit Court for Prince George's County, pursuant to Maryland Code (1974, 1991 Repl.Vol., 1999 Supp.) § 13–206 of the Estates and Trusts Article.[1] The petition was opposed by decedent's children, including Robert Vance, decedent's son apparently from a prior marriage.

Robert Vance retained Barbara Radcliff to write a new will for James, to prepare a deed relating to property owned by James, and to prepare a power of attorney to enable Robert to manage the affairs of his father. On June 1, 1995, the power of attorney was executed by means of an illegible mark purported to be James Vance's signature. Robert Vance used the power of attorney to deposit funds of James Vance's into an account titled in the names of Robert and James Vance as joint tenants with right of survivorship.

Radcliff prepared a deed to the house in Oxon Hill that had been the marital home of James and Elizabeth Vance, and in which Elizabeth Vance continued to live. According to an earlier deed, the property previously had been held by James and Elizabeth Vance as tenants by the entirety. The new deed, executed on August 1, 1995, purported to convey the property in fee simple solely to James Vance. The new deed bears the signature of Elizabeth Vance, the signature of Robert Vance as attorney-in-fact for James Vance, and an

---

1. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1974, 1991 Repl.Vol., 1999 Supp.) Estates and Trusts Article.

illegible mark purported to be the signature of James Vance. The validity of this deed was challenged in a quiet title action brought in the Circuit Court for Prince George's County by Elizabeth Vance on August 17, 1998.

Radcliff prepared a will for James Vance. The will was executed at the veterans' home on August 20, 1995, by means of an illegible mark purported to be James Vance's signature. Several specific bequests to Elizabeth Vance that were contained in a prior will, executed in 1993, were eliminated in the new will.

Robert Vance and his sister Carolyn Vance Hyde retained Radcliff to oppose the guardianship petition filed by Elizabeth Vance. In the guardianship action, in addition to opposing the guardianship, Elizabeth Vance raised issues related to the power of attorney, the deed and the will prepared by Radcliff. In his response to the guardianship petition, Robert Vance contended that his power of attorney rendered the guardianship unnecessary. In the alternative, he contended that he should be appointed guardian of his father's property.

The Circuit Court scheduled a hearing for January 27, 1997. Before the hearing, the parties agreed upon settlement terms that were acceptable to the Circuit Court. The court found that James Vance was disabled and unable to care for his person or his property. The court appointed Elizabeth Vance as guardian of the person, and appointed a disinterested attorney as guardian of the property.[2] James Vance died on

---

2. On August 6, 1997, the day James Vance died, Robert Vance filed a petition for administrative probate before the Register of Wills for Prince George's County. He was appointed personal representative. Despite his having overseen the preparation and execution of the 1995 will, for the apparent purpose of superseding the 1993 will, Robert Vance stated in the petition for probate that to the best of his knowledge, after a diligent search, that the will executed in 1992 was the last will. Unlike the 1993 will, the 1992 will does not express a clear intention to devise bank accounts and investments to Elizabeth Vance.

On January 9, 1998, Elizabeth Vance filed a petition in the Orphans' Court for Prince George's County to caveat the 1992 will, seeking to admit the 1993 will to probate. Robert Vance responded on April 17, 1998 by filing a petition for judicial probate of the 1995 will, admitting

August 6, 1997. On October 8, 1997, the Circuit Court for Prince George's County issued an order terminating the guardianship, approving the final accounting, and discharging the guardian of the property. On April 17, 1998, the court amended the termination order to order the release of the estate assets to the personal representative, Robert Vance, upon presentation of his letters of administration. Appellant never presented her claim for attorney fees or costs to the Circuit Court.

On September 25, 1997, after the death of James Vance, Radcliff presented her claim in the amount of $17,375 to Robert Vance, and on June 17, 1998 to Ralph Powers, attorney for the estate, for the payment of her fees incurred in the preparation of the power of attorney, the deed, the will, and for representation in the guardianship proceeding. When the fees were not paid, on August 4, 1998, Radcliff filed a motion in the Orphans' Court requesting that the personal representative, Robert Vance, pay, from the estate assets, her bill for legal services in the amount of $17,375. The bill indicates that $16,125 was for the preparation of the power of attorney, the deed, and the will, and for representation in guardianship proceeding. Of the amount billed, $13,850 was related to the guardianship proceeding. Radcliff served a copy of the motion on Robert Vance as personal representative; no other interested person received notice. The court granted Radcliff's motion on September 8, 1998, directing payment in the amount of $17,375 to Radcliff from the estate assets. Robert Vance, as personal representative, paid the bill.

Elizabeth Vance's attorney learned of the motion and payment while reviewing the file at the Register of Wills on November 13, 1998, and, on November 19, 1998, filed a motion in the Orphans' Court to vacate the order to pay Radcliff's fees. She also prayed that the court order Radcliff to refund

---

that the 1992 will was invalid. Elizabeth Vance, in turn, filed a petition to caveat the 1995 will. On December 9, 1998, the court granted summary judgment, admitting the 1993 will to probate. Robert Vance remained as personal representative throughout; all three wills named him as such.

the money to the estate. Elizabeth Vance argued that under § 7–502(a), the personal representative was required to give notice to all interested parties because he stood to personally benefit from payment by the estate. Elizabeth Vance also argued that the fees for the guardianship litigation could be approved only by the Circuit Court. On the merits, she maintained that the fees should not have been approved because Radcliff's legal services had not been rendered with due care, and that in any case the estate could not be charged the fees because the services had been rendered at the behest of and for the benefit of Robert Vance, and did not benefit James Vance.

On December 11, 1998, the Orphans' Court vacated the order of September 8, 1998 and directed Radcliff to return the money to the estate. On December 18, 1998, after a hearing before the court on Elizabeth Vance's motion for summary judgment related to proceedings to caveat the 1995 will and admit the 1993 will to probate, Radcliff filed a motion to strike the order of December 11, 1998. On January 13, 1999, the court denied Radcliff's motion to strike the December 11, 1998 order, ruling that payment should not have been ordered without prior notice to all interested persons. Radcliff noted a timely appeal to the Court of Special Appeals. We granted a writ of certiorari on our own motion before review by that court.

■ On June 25, 1999 the Orphans' Court entered a consent order reflecting a settlement agreement reached by the parties. The order requires, *inter alia,* that Robert Vance deliver to Elizabeth Vance a promissory note in the amount of $17,375, to use his best efforts to recover the fee paid to Barbara Radcliff, and to pay any amounts so recovered to Elizabeth Vance to reduce the amounts due under the promissory note. Appellant argues that the settlement moots this appeal. We disagree.

The settlement contemplates action to recover the fees for the estate; far from being moot because of the settlement, this appeal helps to fulfill its terms. The consent order requires

the creation of a life estate in Elizabeth Vance in the Oxon Hill house, with the remainder in James Vance's children and grandchildren. The promissory note is to be payable upon the sale of the Oxon Hill house or the death of Elizabeth Vance. Also, the note is to be secured by a deed of trust, on the remainder interest in the house, in favor of Elizabeth Vance. Thus, Elizabeth Vance will receive the money during her lifetime only if she agrees to the sale of the house or the fees paid to Radcliff are recovered. To determine that the consent order moots the appeal would thus be to prevent Elizabeth Vance from recovering the money during her lifetime unless she agrees to the sale of the house. We reject Appellant's mootness argument.

Appellant argues that the Orphans' Court did not have jurisdiction to order her to repay money to the estate. She asserts that once her bill was paid by the personal representative pursuant to the court order, she was simply a satisfied creditor who had no further business with the estate. The court's narrowly defined statutory jurisdiction over the administration of estates, Appellant argues, does not extend to ordering a creditor to make any payment to the estate.

Appellee contends that the jurisdiction and authority of the orphans' court are sufficiently broad to include the power to correct errors and to order a creditor to restore money to an estate which the estate was ordered to pay erroneously. Appellee's view is that the orphans' court has the same equitable power to order repayment of funds in such a case as a circuit court would have.

The orphans' court is a court of record. *See Redman v. Chance,* 32 Md. 42, 52 (1870). Judicial power is vested in the Orphans' Courts by the Maryland Constitution, *see* MD. CONST. art. 4, § 1; and the court has such powers as the Legislature may prescribe, *see* MD. CONST. art. 4, § 40.[3] Sec-

---

3. Section 40 of Article IV provides, *inter alia,* that the judges of the Orphans' Courts "shall have all the powers now vested in the Orphans'

tion 2–102, setting forth the jurisdiction of the orphans' courts as the probate courts of the State, makes clear that the legislatively-conferred jurisdiction is to be construed only as expressly stated:

> (a) Powers.—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

The orphans' courts are tribunals of special limited jurisdiction, and can only exercise such authority as is expressly provided by law. *See, e.g., Comptroller of the Treasury v. Russell,* 284 Md. 174, 177, 395 A.2d 488, 489 (1978). These limitations do not, however, prevent the orphans' courts from properly administering justice within their assigned sphere. "Whilst the Orphans' Court has a special and limited jurisdiction, it is, by the law, clothed with extensive powers, and charged with the performance of very important duties in regard to the administration of the personal estate of deceased persons." *Jones v. Jones,* 41 Md. 354, 361 (1875). Accordingly, "it is not without all power to do justice." *Parker v. Leighton,* 131 Md. 407, 423, 102 A. 552, 558 (1917). Section 2–103 ensures that the orphans' courts have authority sufficient to carry out their duties. That section provides as follows:

> The court has the same legal and equitable powers to effectuate its jurisdiction, punish contempts, and carry out its orders, judgments, and decrees as a court of record with general jurisdiction in equity.

Thus the orphans' courts are empowered to decide such matters as are necessarily incident to the exercise of the powers expressly granted them. *See State v. Talbott,* 148 Md. 70, 79, 128 A. 908, 911 (1925). We have stated that "the legislative intention was to confer adequate power and juris-

---

Courts of the State, subject to such changes as the Legislature may prescribe."

diction upon Orphans' Courts in every case in which their general powers would enable them to act." *Wingert v. State,* 125 Md. 536, 541, 94 A. 166, 167 (1915). We referred then to former Art. 93, § 235,[4] but the present § 2–103 expresses a similar intention.

■ The power of the court to correct its mistakes made in the course of the exercise of its expressly-granted powers is among those necessarily incident to the exercise of those powers. *See In re Estate of Stratton,* 46 Md. 551, 554 (1877) (holding that "[e]rrors and mistakes in [an administration account] can as properly be corrected as in any order that may be improvidently passed"); *see also* PHILIP L. SYKES, 1 MARYLAND PRACTICE: PROBATE LAW AND PRACTICE § 206, at 218 (1956) (noting the Orphans' Court's "power to correct errors into which it has fallen," and noting that to the end of correcting such errors, "it may abrogate or modify its own orders when necessary in the interests of justice").

This Court has long recognized the power of the Orphans' Courts to correct errors. As early as 1827 we rejected the argument Appellant now makes, *i.e.,* an Orphans' Court's correction of its error is an exercise of jurisdiction not expressly conferred "under pretext of incidental power," as forbidden by § 2–102. *See, e.g., Raborg v. Hammond,* 2 H. & G. 42, 51 (1827) (holding power to revoke letters of administration is "necessarily inherent in the Orphans' Courts, and a part and of the essence of the power delegated to them, of granting" letters). By 1914 the principle that an Orphans' Court has the authority to correct its own errors had been applied often, and we could state that "[i]t has been repeatedly held that the Orphans' Courts of the state have ample authority ... to abrogate and modify their own orders, when neces-

---

**4.** Maryland Code (1911) Art. 93, § 235 provided, in part:

The court shall have full power to take probate of wills, grant letters testamentary and of administration, direct the conduct and accounting of executors and administrators, superintend the distribution of estates of intestates, secure the rights of orphans and legatees *and administer justice in all matters relating to the affairs of deceased persons,* also of persons supposed to be dead.... (Emphasis added.)

sary to promote the ends of justice." *Malkus v. Richardson,* 124 Md. 224, 229, 92 A. 474, 476 (1914) (citing *French v. Washington County Home,* 115 Md. 309, 80 A. 913 (1911)). In *Malkus,* a widow who had been devised five dollars by her husband's will sought to re-open the administration two years after the orders of ratification and distribution had been entered, on the ground that she had been denied her right to renounce the will and elect a statutory share. The Court rejected the administrator's argument that the Orphans' Court for Baltimore County had no power to re-open the administration and rescind the orders of ratification and distribution, and that the widow's application for such action had not been made within a reasonable time. The Court reversed the Orphans' Court's order dismissing the widow's petition. *See also Gallagher v. Martin,* 102 Md. 115, 62 A. 247 (1905); *Geesey v. Geesey,* 94 Md. 371, 51 A. 36 (1902); *Hoffman v. Hoffman,* 88 Md. 60, 40 A. 712 (1898); *Hardt v. Birely,* 72 Md. 134, 19 A. 606 (1890); *Gavin v. Carling,* 55 Md. 530 (1881); *Bantz v. Bantz,* 52 Md. 686 (1880); *In re Estate of Stratton,* 46 Md. 551; *Scott v. Fox,* 14 Md. 388 (1859).

We have applied the principle that the Orphans' Courts have power to modify their judgments to correct error in a wide variety of situations. The principle has been applied, for instance, to order a property manager to refund to the executor a wrongly-paid commission for management of property in the estate, and to order the executor then to refund the commission to the estate, *see Parker,* 131 Md. at 423, 102 A. at 558; to reopen an estate declared closed to rectify an erroneous distribution, *see Malkus,* 124 Md. at 229, 92 A. at 476; to rescind an order against caveatees to pay the costs of the caveat of a will, and to order payment instead by the estate, *see French,* 115 Md. at 311, 80 A. at 914; to alter an order previously entered granting a commission to an administrator, so as to reduce the amount of the commission, *see Dalrymple v. Gamble,* 68 Md. 156, 167, 11 A. 718, 722 (1887); and to correct the error of allowing commissions on the par value of bonds rather than on their appraised value, *see Stratton,* 46 Md. at 553.

Appellant argues that *Dulin v. Talbot Bank of Easton,* 163 Md. 294, 162 A. 663 (1932) is dispositive of the instant case. In *Dulin* we held that "a third party which was not interested in the estate except as a debtor or creditor . . . could not be compelled to come into the orphans' court to have there determined a dispute between it and the administrator." *Dulin,* 163 Md. at 297, 162 A. at 663. Appellant's reliance on this case is misplaced, for "[a]n orphans' court . . . . has jurisdiction over interested persons and creditors, who invoke the court's power to determine issues within its express powers." *Kaouris v. Kaouris,* 324 Md. 687, 709, 598 A.2d 1193, 1203–04 (1991) (holding the Orphans' Court has jurisdiction to interpret a marital settlement agreement, where the issue before the court was within the court's express powers and construction of the document is in furtherance of that power). Here, unlike the creditor in *Dulin,* Radcliff invoked the express powers of the court.

■ The power the Orphans' Court exercised in this case is comparable to an equity court's power to order restitution in similar situations. When a litigant has been deprived of property by order of a court, and the order is subsequently reversed, the equity court may order restitution. In *Redwood Hotel v. Korbien,* 197 Md. 514, 516, 80 A.2d 28, 29 (1951), we observed, with approval, that "[t]he inherent power of the courts to restore to a litigant any property of which he has been deprived by the enforcement of a judgment which is subsequently reversed has been recognized in England from a very early period."

In the present case, the Orphans' Court had jurisdiction to order the estate to pay a debt to a creditor. Therefore, it also had jurisdiction to order the money restored to the estate, after it had determined that the original order was in error.

■ We turn now to the question of whether the Orphans' Court abused its discretion in denying Radcliff's motion to strike its order requiring her to repay the money to the estate. Elizabeth Vance argued to the Orphans' Court that the payment to Radcliff was improper because the estate was re-

quired to seek prior approval from the Circuit Court to pay any fees earned prior to or during the guardianship of James Vance. She also argued that the personal representative was required to give notice to any interested parties prior to making any payments to Radcliff. In this appeal, Appellee argues that whenever the personal representative stands to benefit from a payment from estate assets, under § 7–502(a), all interested persons must be notified before any such payment may be ordered. Appellee argues that Robert Vance benefitted from the payment, because he engaged Radcliff's services and would have been liable personally for her fees if the estate had not paid them. Because notice was not given, according to Appellee, the Orphans' Court erred in ordering payment.

Section 7–502 pertains to situations in which a creditor makes a claim against an estate, and the personal representative could benefit from the estate's payment of the claim. It provides, in pertinent part, as follows:

(a) *Notice.*—The personal representative shall give written notice to each creditor who has filed a claim under § 8–104 which is still open and to all interested persons of a claim, petition, or other request which could result, directly or indirectly, in the payment of a debt, commission, fee, or other compensation to or for the benefit of the personal representative or the attorney for the estate. The notice shall state the amount requested, and set forth in reasonable detail the basis for the request. It shall also state that a request for hearing may be made within 20 days after the notice is sent.

(b) *Finality of order.*—Unless there was fraud, material mistake, or substantial irregularity in the proceeding, or a request for a hearing is filed within 20 days of the sending of the notice, any action taken by the court on the petition is final and binding on all persons to whom the notice was given.

Section 7–502 was passed as part of the comprehensive revision of Maryland's law of decedents' estates enacted in

1969. *See* 1969 Maryland Laws ch. 3. The text of the statute has remained substantially the same since it was first proposed by the Governor's Commission to Review and Revise the Testamentary Law of Maryland in 1968. *See* Governor's Commission to Review and Revise the Testamentary Law of Maryland, Second Report § 7–502, at 117 (1968). In the report, the Commission explained that the purpose of the section is to ensure that the personal representative may not benefit personally by payments made from the estate's assets, without notice to, and an opportunity for objection by, others interested in the estate:

> When the Court is to be asked to pay out or distribute estate assets to the personal representative or to the attorney for the estate, or for their respective benefits, whether in payment of a claimed debt, as compensation for services rendered, or otherwise, the personal representative becomes momentarily, in effect, an adverse party. Therefore, to this limited degree the Commission felt that not only should notice of such contemplated request be given to all interested persons, but also that there should be a period of 20 days within which any objection thereto could be filed, and a hearing held thereon, before any payment is actually made.
>
> Even in the absence of any request for a hearing, or an objection filed, the Court would nevertheless on its own motion, and with the thoroughness that it would deem appropriate, scrutinize the validity, fairness and propriety of any such request for payment.

*Id.*

We turn now to the instant case. Robert Vance hired Barbara Radcliff. Clearly, a large part of the services Radcliff rendered were for the benefit of Robert. For example, she was hired by Robert and his siblings to oppose the guardianship petition. In addition, Robert Vance could have been responsible personally for her fee if a court were to hold that the power of attorney under which he purported to act was invalid, or that his actions were not within the scope of his agency. Thus, the motion for payment of her fee, in the words of § 7–502, was "a claim, petition, or other request

which could result, directly or indirectly, in the payment of a debt . . . for the benefit of the personal representative." The statute requires that "[t]he personal representative shall give written notice . . . to all interested persons" of the claim. Because the interested parties had no notice, the Orphans' Court's order to pay Radcliff's fees was error when entered.[5]

■ The action of the Orphans' Court in this case was consistent with both of these limitations. Elizabeth Vance was not among the "persons to whom notice was given" under § 7–502(b); as a result, the order was not "final and binding upon" her.

■ Furthermore, because Elizabeth Vance did not receive notice, there was "substantial irregularity in the proceeding." An irregularity is a failure to follow required process or procedure. *See Early v. Early*, 338 Md. 639, 652, 659 A.2d 1334, 1340 (1995). It is settled that a failure to provide a required notice to a party is an irregularity in a proceeding in a circuit court under Rule 2–535. *See, e.g., Mutual Benefit Soc'y of Baltimore, Inc. v. Haywood*, 257 Md.

---

**5.** Under § 7–502(b) Elizabeth Vance's ability to obtain correction or alteration of the court's order would normally have required her to file a request for a hearing within 20 days unless there was fraud, mistake, or substantial irregularity in the proceeding. Another limitation on obtaining correction of an order is the rule, laid down in a long line of decisions of this Court, that "a petition to revoke an order of an Orphans' Court [must] be filed within thirty days from the date petitioner gains knowledge of the order sought to be set aside, or knowledge of such facts as would put an ordinarily prudent person on inquiry." *Parshley v. Mott*, 241 Md. 577, 578, 217 A.2d 300, 300 (1966) (citing *First National Bank of Maryland v. White*, 239 Md. 289, 211 A.2d 328 (1965); *Gessler v. Stevens*, 205 Md. 498, 109 A.2d 74 (1954); *Watkins v. Barnes*, 203 Md. 518, 102 A.2d 295 (1954); *Perrin v. Praeger*, 154 Md. 541, 140 A. 850 (1928); *Hunter v. Baker*, 154 Md. 307, 141 A. 368 (1928); *Didier v. Carr*, 115 Md. 264, 80 A. 925 (1911); *Redman v. Chance*, 32 Md. 42 (1870)). Also, because Elizabeth Vance was not notified of the petition for payment, and her attorney did not learn of the payment until November 13 1998, her motion to correct the order was timely. The motion was filed on November 19, 1998, well within the 30–day limit stated in *Parshley*. Thus, because the Orphans' Court's original order to pay Radcliff was erroneous and Elizabeth Vance's motion to correct the order was timely, the Orphans' Court had jurisdiction to order Radcliff to repay the fees.

538, 541, 263 A.2d 868, 870 (1970); *Dypski v. Bethlehem Steel Corp.,* 74 Md.App. 692, 699, 539 A.2d 1165, 1169 (1988); *Alban Tractor Co. v. Williford,* 61 Md.App. 71, 79, 484 A.2d 1039, 1043 (1984). By direct analogy, such a failure is an irregularity in an orphans' court as well. We hold that the irregularity was "substantial" in that the personal representative's failure to give notice prevented Elizabeth Vance from opposing the motion to pay Radcliff's fees before the order to pay was entered.

 We turn next to the question whether Appellant applied to the proper court when she sought an order to pay her fees from the Orphans' Court, or should have applied instead to the Circuit Court where the guardianship petition had been granted. Appellee argues that Radcliff's fees were "attorney fees for legal services rendered in connection with a circuit court guardianship proceeding," and that such fees can only be paid with the approval of the circuit court in which the guardianship proceedings occurred, pursuant to § 15–102(*o*). Appellant argues that because James Vance had died at the time she petitioned for her fees, the guardianship proceedings had ended, and the Circuit Court was no longer involved in proceedings regarding the estate. Her position is that she sought payment simply as a creditor of the decedent's estate who had rendered services for the benefit of the decedent during his lifetime.

We agree with Appellant that the approval of the Circuit Court was not required. Section 15–102(*o*), providing for circuit court approval of fees paid by a guardian to an attorney providing services related to the guardianship, does not apply to Radcliff's fees. Section 15–102(b) provides, in pertinent part, as follows:

> (1) A fiduciary may perform the functions and duties enumerated in this section without application to, approval of, or ratification by a court.

> \* \* \* \* \* \*

> (*o*) Employ agents.—He may employ for reasonable compensation agents, attorneys, auditors, investment advisors

or other persons with special skills, to advise or assist the fiduciary in the performance of his administrative duties, *but no attorneys' fee in an amount exceeding $50 shall be paid in a fiduciary estate administered under court jurisdiction unless the amount of the fee has been first approved by order of court.*

(Emphasis added.) This section contemplates that a guardian may pay fees in excess of $50 to an attorney employed by the guardian to provide services related to the guardianship only with the circuit court's approval. Radcliff, however, was not an attorney employed by the guardian. She was engaged by Robert Vance, who was never guardian of the person or property of James Vance; and she claimed against the decedent's estate as a creditor of James Vance, upon the theory that the legal services she rendered were for James Vance's benefit. It was open to Radcliff to make a claim against the guardianship estate during James Vance's lifetime, by presenting her bill to the guardian. Indeed, had Radcliff wished to collect her fees from the fiduciary estate before James Vance's death, it would have been necessary to apply to the guardian, and, if the claim were rejected, to the Circuit Court. But there was no requirement that she seek payment during James Vance's lifetime.

Nor was there any reason for Radcliff to apply to the Circuit Court after James Vance's death. Section 13–221(b) provides that "[a] guardianship proceeding shall terminate upon ... [t]he death or presumptive death of the minor or disabled person." Section 13–221(c) provides that the termination of the guardianship estate must be in accordance with the Maryland Rules. Rule 10–710 requires the filing by the fiduciary of a petition to terminate the estate, accompanied by a final accounting, within 45 days of discovering the death of the person subject to the guardianship. The Circuit Court issued a termination order on October 8, 1997, after such a filing was made. Later, the assets were transferred to the personal representative. As a result, when Appellant filed her fee request in the Orphans' Court on August 4, 1998, no guardianship proceedings were before the Circuit Court, and

the guardian no longer had control of the property. The Orphans' Court was at that time the proper court to consider an unpaid creditor's claim.

*JUDGMENT OF THE ORPHANS' COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.*