

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2004

# Marshall v. Lauriault

Precedential or Non-Precedential: Precedential

Docket No. 03-2801

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Marshall v. Lauriault" (2004). *2004 Decisions.* Paper 554.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/554

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 03-2801 & 03-3282


ELINOR F. MARSHALL;
HARRIET FENTON PARKS;
CAROLL D. KNOTT;
LINDSAY DRYDEN, III;
RANDOLPH FENTON, JR.;
GLENN THORNTON;
SYNDIE THORNTON SMITH;
HEATHER THORNTON;
MATTHEW C. FENTON, III
THOMAS T. FENTON,

                    Appellants

                v.

BRUCE LEA LAURIAULT;
MERCANTILE-SAFE DEPOSIT &
TRUST
COMPANY; K. DONALD PROCTOR;
ELIZABETH CHANDLER
LAURIAULT
PIERSON; SALLY VAUGHN
LAURIAULT

_____

Appeal from the United States District
Court
For the District of New Jersey
D.C. No.: 02-cv-05945
District Judge: Honorable Anne E.
Thompson

_____

Argued: April 21, 2004

Before: SCIRICA, Chief Judge,
ROSENN and GREENBERG, Circuit
Judges.

(Filed: June 15, 2004)

Marvin J. Brauth, Esq. (Argued)
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, NJ 07095
        *Counsel For Appellants*

Gerard G. Brew, Esq. (Argued)
Robert A. Mintz, Esq.
Tammy L. Meyer, Esq.
McCarter & English, LLP
100 Mulberry Street
Newark, NJ 07102
        *Counsel For Appellees*

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

This appeal presents an unusual challenge to the action of the United States District Court in refusing to declare the State of New Jersey's adult adoption statute unconstitutional for lack of a notice provision. Other difficult questions posed relate to the District Court's diversity jurisdiction to hear a challenge to an adult adoption on state law grounds.

Maria Fenton ("Maria"), now

deceased, was one of ten beneficiaries of a trust created by her uncle, Foster T. Fenton, in Maryland in 1966. Several years before her death, Maria adopted her four adult cousins through a proceeding in New Jersey state court. The other beneficiaries sought declaratory relief in the United States District Court for the District of New Jersey to have the New Jersey adult adoption statute declared invalid and Maria's adoption proceedings declared null and void. The District Court granted Maria's motion to dismiss the action under Fed. R. Civ. P. 12(b)(6). We affirm in part, reverse in part, and remand for further proceedings.

## I.

Plaintiffs/Appellants are surviving beneficiaries of a revocable trust (the "Trust") created by Foster T. Fenton ("Fenton") in the State of Maryland on November 29, 1966. The Trust provides that after the death of Fenton's wife, the balance of the Trust would inure to the benefit of Fenton's brothers and their wives. After the deaths of the brothers and wives, the Trust provides for the annual income to be paid to each of Fenton's ten nieces and nephews during their remaining lifetimes. Upon the death of any niece or nephew, his or her designated one-tenth share of income from the Trust is to be paid to the deceased niece or nephew's "issue," as the case may be. If there are no living issue, the share is to be paid, *per stirpes*, to the surviving nieces or nephews or their living issue. The Trust terminates twenty-one years after the death of the last of the ten named nieces and nephews. At

that time, the principal is to be distributed among the individuals entitled to receive the Trust income at the date of termination.

The Trust specifically provides that "an adopted child and such adopted child's lawful blood descendants shall be considered in this instrument as lawful blood descendants of the adopting parent or parents." The Trust does not include any specific provision pertaining to individuals adopted as adults.

Maria filed a Complaint in July 1991 in the Superior Court of New Jersey, Chancery Division - Family Part, Hunterdon County, to legally adopt four adults. The adoptees were the children of Maria's first cousin, who recently had died. The Superior Court granted the adoption pursuant to the New Jersey adult adoption statute, N.J.S.A. 2A:22-1 *et seq.* Appellants claim that neither they, nor the trustees, received notice of the adoption proceeding.

Prior to completing the adoption, Maria's attorney, James W. Lance, wrote in 1990 to the Trust's corporate trustee, Mercantile-Safe Deposit & Trust Company, informing the trustee that Maria intended to adopt her four cousins. The letter inquired whether, in the trustee's opinion, the adult adoption would enable the adoptees to inherit Maria's share of the Trust. The trustee responded to the inquiry offering an unqualified opinion that the adoption would enable the adoptees to inherit Maria's share of the Trust, *per stirpes*. Upon completion of the adoption,

Maria's attorney delivered the amended birth certificates of the adoptees and the Order of Adoption to the corporate trustee.

Maria died in 2002. Upon her death, three of her adopted children (collectively, "the Adoptees") asserted an interest in the Trust as Maria's "issue."[1] In response, the Appellants, who are all beneficiaries under the Trust, filed the complaint at bar in the U.S. District Court for the District of New Jersey. The complaint raised two claims for declaratory relief seeking, *inter alia*, a judgment that would (1) declare the 1991 New Jersey adoption decree invalid insofar as it created rights or interests in the Trust for the adult Adoptees; (2) declare that the adult Adoptees have no rights to or interest in the income or principal of the Trust; and (3) direct the trustees not to pay any portion of the income or principal of the Trust to the adult Adoptees.

Although both counts in the complaint seek identical relief, they are based on different legal theories. The first count alleges that Maria's failure to provide notice of the adoption proceeding to the Appellants "prejudiced" their interests in the Trust, thereby invalidating the adoption insofar as it would affect their interests. The basis for the claim of "prejudice" is not completely clear from the language of the complaint, and we interpret it as a challenge to the validity of the adoptions based on the applicable state law. See Davis v. Ohio Barge Lines, Inc., 697 F.2d 549, 552 (3d Cir. 1983) ("in passing on a motion to dismiss on the ground, *inter alia*, of lack of jurisdiction over the subject matter, the allegations of the complaint should be construed favorably to the pleader"). Thus, we read the claim to allege, as the Appellants assert in their brief, that the adoptions were invalid under the New Jersey law of adoptions, and that the New Jersey adoption decrees should not be given full faith and credit under Maryland law, which governs the Trust.

The second count alleges alternatively that because the New Jersey adult adoption statute, N.J.S.A. 2A:22-1, *et seq.*, does not provide for notice to persons or entities whose interests may be affected by the adoption, the statute is invalid under the Fourteenth Amendment to the United States Constitution and the New Jersey State Constitution.

In January of 2003, the District Court granted Appellants a temporary restraining order, prohibiting the Adoptees from filing an action in Maryland state court to claim their interest in the Trust. In March of 2003, the District Court denied the Appellants' motion for a preliminary injunction and vacated the temporary restraining order. Once the restraining order was lifted, the Adoptees filed a claim in Maryland state court ("the Maryland case") seeking to compel the trustees to make distributions from the Trust to the

---

[1] Maria's adopted daughter Virginia Lewis Lauriault predeceased Ms. Fenton.

Adoptees.[2] The Adoptees also filed an action in the Superior Court of New Jersey, Chancery Division, Probate Part, Hunterdon County, ("the New Jersey case") seeking a declaratory judgment certifying that the New Jersey adoption decree is valid for all purposes.[3]

On May 27, 2003, the District Court granted the Adoptees' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The appellants timely appealed.[4]

## II.

The Appellants claimed jurisdiction for their underlying suit as a matter arising under the Constitution of the United States pursuant to 28 U.S.C. §

1331, and as a diversity suit pursuant to 28 U.S.C. § 1332. This court maintains appellate jurisdiction under 28 U.S.C. § 1291. As an appeal from the District Court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), our review is *de novo*. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Upon a motion to dismiss, we construe the complaint liberally, and assume all factual allegations in the complaint to be true. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). The dismissal will be upheld if we agree with the District Court that the Appellants can prove no set of facts that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The District Court held that it did not have jurisdiction to hear any of the Plaintiff's claims based on state law, and considered only the challenge to the New Jersey adult adoption statute on constitutional due process grounds. Regarding the challenge to the validity of the New Jersey state court adoption decree, the District Court cited to District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) for the proposition that federal district courts do not have jurisdiction to hear a challenge to state-court decisions, even if the challenge raises a constitutional claim. As to the claim for a declaratory judgment that the Adoptees have no interest in the Trust, the District Court held that it could not assume jurisdiction over that issue under the

---

[2] The Maryland case is captioned In the Matter of the Marital Trust Created Under the Revocable Deed of Trust Executed by Foster T. Fenton as Settlor and Hilary W. Gans and Mercantile-Safe Deposit and Trust Companies as Trustees, Case No. 24-T-03-000074 (Cir. Ct. Baltimore Cty.).

[3] The New Jersey case is captioned In the Matter of the Estate of Maria B. Fenton, deceased. The Adoptees did not provide a case number citation to this court.

[4] In addition to Maria Fenton's adopted children, Mercantile-Safe Deposit & Trust Company, K. Donald Proctor, Matthew C. Fenton and Trustees were also named as nominal appellees.

4

probate exception to diversity jurisdiction.[5] Finally, although the District Court did not address this issue, the Adoptees argued before the District Court and again in their appellate brief that this Court should abstain from deciding the Appellants' claims. We therefore turn to each of these jurisdictional issues.

## A.

In dismissing for lack of jurisdiction the challenge to the validity of the New Jersey adoption decree, the District Court noted the general principle that federal district courts may not sit as appellate courts to review state court decisions. Although the District Court cited only to <u>District of Columbia Court of Appeals v. Feldman</u>, this principle is commonly known as the Rooker-Feldman doctrine. <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923). The District Court correctly stated the general principle under Rooker-Feldman, but failed to recognize an important factor in the doctrine's application. Under the Rooker-Feldman doctrine, "a *party losing* in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." <u>Johnson v. DeGrandy</u>, 512 U.S. 997, 1005-1006 (1994) (emphasis added). In this case, the Appellants were not a party to the adoption proceeding in New Jersey, and they are not challenging an adverse judgment against them. Rather, the Appellants mount a collateral attack on the validity of the New Jersey adoption decree. Therefore, we hold that the District Court's finding of no jurisdiction over a claim of a non-party to state litigation because of Rooker-Feldman to be in error. The Rooker-Feldman doctrine does not apply to this case, and the District Court could, in theory, assert diversity jurisdiction over this collateral attack to the New Jersey adoption decree.

## B.

The District Court found that it did not have jurisdiction to declare that the Adoptees have no right or interest in the Trust due to the probate exception to diversity jurisdiction. The District Court did not conduct any analysis of this issue, but simply cited to <u>Princess Lida of Thurn and Taxis v. Thompson</u>, 305 U.S. 456 (1939), to support its position. We conclude again that the District Court's holding in this matter was incorrect. In <u>Princess Lida</u>, the Supreme Court was called upon to resolve a dispute between a federal district court and the Pennsylvania Court of Common Pleas, where both courts had claimed jurisdiction over a trust matter and had issued orders restraining the parties from proceeding in the other court. 305 U.S. at 461. The Supreme Court determined that the claims in that case were not brought *in personam* to determine the rights of any person in the trust. <u>Id.</u> at 466-467. Had the claims been brought under diversity jurisdiction *in personam*, the Court's analysis would have

---

[5] <u>See</u> <u>infra</u> Part II.B for a description of the origin and scope of the probate exception.

5

been different. Id. Rather, the claims were *quasi in rem*, as they related to the administration and restoration of the corpus of a trust. Id. at 467. Therefore, the Supreme Court held that the state court maintained exclusive jurisdiction over the corpus of the trust, and the federal district court could exercise no jurisdiction. Id. at 468. The differences between Princess Lida and the case at hand are stark. First, there is no conflict between the federal and state courts regarding jurisdiction.[6] Second, the case at bar deals primarily with a determination of rights in the Trust among the parties; there is no claim *in rem* requiring the federal court to maintain jurisdiction over the corpus of the trust.

A determination of whether the probate exception to diversity jurisdiction applies requires a much more comprehensive analysis than that offered by the District Court. Several of our sister circuit courts have discussed the limits of the probate exception, often acknowledging its difficult contours. See, e.g., Mangieri v. Mangieri, 226 F.3d 1, 2 (1st Cir. 2000) (noting that "the precise scope of the probate exception has not been clearly established"). However, the Supreme Court and the several circuit courts have sufficiently clarified the doctrine's guiding principles to resolve the issue presented in this case.

Generally speaking, the Judiciary Act of 1789 conferred equity jurisdiction upon the federal courts, which did not include probate jurisdiction. Markham v. Allen, 326 U.S. 490, 494 (1946) (noting that the English Court of Chancery in 1789 did not have jurisdiction over probate matters). Thus, federal courts do not have jurisdiction to probate wills or administer estates. Id. However, federal courts do have jurisdiction to entertain suits raised by creditors, heirs and other claimants against an estate as long as the federal court "does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Id. See also Moore v. Graybeal, 843 F.2d 706, 709 (3d Cir. 1988). In Markham, the Supreme Court upheld a district court judgment declaring that a petitioner was "entitled to receive the net estate of [the decedent] in distribution" because the judgment did not disturb the administration of the decedent's estate, but rather "decree[d] petitioner's right in the property to be distributed after its administration." 326 U.S. at 495.

In the cases following Markham, the circuit courts have further refined the probate exception to diversity jurisdictions explaining generally that the jurisdictional question can be decided by determining whether the action could be brought in a state court of general jurisdiction where the federal court sits. Foster v. Carlin, 200 F.2d 943, 947 (4th Cir. 1952). However, where a matter does not ordinarily fall within the probate exception to diversity jurisdiction, the exception may not be

---

[6] The Appellees stipulated at oral argument that the Maryland state court has stayed the proceedings in the case brought by the Adoptees pending resolution of this appeal.

expanded or federal jurisdiction denied because state law would allow the matter to be assigned to a probate court. See, e.g., Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43-44 (1909).

Turning to the case at hand, we conclude that the District Court erred in determining that the probate exception to diversity jurisdiction applies to this case. Fenton established the Trust at issue in this case prior to his death, and there is no current or pending matter regarding the Trust to be administered in the state probate court. To this Court's knowledge, no state probate court exercised jurisdiction over the Trust prior to the appellants filing the present suit. Therefore, the federal court is not asked to interfere with any probate proceeding or assume control over property in probate. Thus, the District Court possesses diversity jurisdiction over this claim *in personam* to determine the rights of the parties in the Trust.

To further reinforce the point, we note that the claim brought by the Adoptees to establish their rights in the Trust was appropriately raised in Maryland Circuit Court, the state court of general jurisdiction.[7] In that action, the Maryland court would presumptively consider the same issues presently before this court, including whether Maryland law requires recognition of the New Jersey adoption decree and a grant of full faith and credit for all purposes. Because these issues are appropriate for the Maryland state court of general jurisdiction, and not the Maryland probate court, the federal court's diversity jurisdiction, consequently, is not disturbed by the probate exception.[8]

## C.

The Adoptees argue that this Court should abstain from deciding this case, based on several recognized abstention doctrines. In order to weigh the appropriateness of abstention, it is helpful to summarize the parties' positions regarding the state law issues before us. Appellants concede that the Trust is governed by Maryland law, but argue that the New Jersey adoption decree is not entitled to full faith and credit in Maryland because it is the result of an invalid judicial ruling. Appellants cite to a series of New Jersey cases for the proposition

---

[7] Under the Maryland constitution, the courts and legislature have vested probate jurisdiction in the orphan's court. See Radcliff v. Vance, 757 A.2d 812, 816 (Md. 2000). Because the Trust is governed by Maryland law, and only the Maryland courts could assert any potential probate jurisdiction, the case

brought by the Adoptees in New Jersey does not affect the probate exception to diversity jurisdiction analysis.

[8] It is worth noting that even if the Maryland case is postured *in rem*, the federal court will not be stripped of jurisdiction because the state court claim was filed after the federal *in personam* claim. See Reichman v. Pittsburgh Nat'l Bank, 465 F.2d 16, 18 (3d Cir. 1972).

7

that in New Jersey, adult adoptions entered for the purpose of inheriting from a third party or "stranger to the adoption" are not valid.[9] Had the Appellants been provided notice of the adoption proceeding, they suggest that they would have informed the New Jersey court of Maria's "invalid" purpose in the adoption (i.e. arranging for her cousins to inherit from the third party Trust) and prevented the court from approving the adoption.

The Adoptees argue that New Jersey law does not prohibit adult adoptions simply because they involve, among other things, inheritance from a third party passing through the adoptive parent. Adoptees assert that the adoption is valid because they complied with every requirement of the New Jersey adult adoption statute, N.J.S.A. 2A:22-1 *et seq.*, and that Maryland law explicitly states that adult adoptees will be considered "issue" entitled to the same rights as natural children in matters governing the disposition of a trust. See Evans v.

McCoy, 436 A.2d 436 (Md. 1981).

As noted above, once the District Court resolved its temporary restraining order, the Adoptees filed the Maryland case seeking distribution of their interest in the Trust funds, and the New Jersey case seeking declaratory relief to establish the validity of the adoption. These pending state court claims form the basis for the Adoptees' request for abstention.

The Adoptees rely on two different lines of cases to support their request for abstention. First, under Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941) and its progeny, the Supreme Court acknowledged that the federal courts may exercise their "wise discretion" to abstain from a case if a parallel state suit may resolve the federal question. 312 U.S. at 501. Subsequent cases refined the Pullman abstention doctrine, warning that abstention is only appropriate in "exceptional circumstances." Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 14 (1983) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)). The appropriateness of abstention should be reached by balancing factors such as "inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." Moses H. Cone, 460 U.S. at 15 (citation omitted). Yet, none of these factors will be determinative, and the balance is "heavily weighted in favor of the exercise of jurisdiction." Id. at 16 (citation omitted).

---

[9] See Matter of Duke, 305 N.J. Super. 408, 702 A.2d 1008 (N.J. Super. Ct. Ch. Div. 1995); Matter of the Action of M for the Adoption of P, an Adult, 193 N.J. Super. 33, 471 A.2d 1220 (N.J. Super. Ct. Law Div. 1983); Matter of Nicol's Estate, 152 N.J. Super. 303, 377 A.2d 1201 (N. J. Super. Ct. App. Div. 1977); Matter of Griswold's Estate , 140 N.J. Super. 35, 354 A.2d 717 (Morris County Ct. 1976); In re Comly's Estate, 90 N.J. Super. 498, 218 A.2d 175 (Gloucester County Ct. 1966).

The Supreme Court also acknowledged that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" Colorado River, 424 U.S. at 817 (citing McClellan v. Carland, 217 U.S. 268, 282 (1910)). In fact, when a judgment sought is strictly in personam, both state and federal courts with concurrent jurisdiction may proceed until judgment is obtained in one of them. Princess Lida, 305 U.S. at 465-466. See also In re Diet Drugs, 282 F.3d 220, 234 (3d Cir. 2002) (explaining that parallel *in personam* actions may proceed in federal and state courts, with principles of *res judicata* resolving the effect of a judgment in one court upon the other).

Under these circumstances, we do not believe that this case requires application of Pullman abstention. First, deferring the state law issues to the state courts would not likely resolve the federal constitutional question presented. Second, we see no issues in these state law claims that create the "exceptional circumstances" required for Pullman abstention.

However, Adoptees also argue for abstention under an alternate theory. Despite the strong antipathy to abstention, the Supreme Court acknowledged a specific situation that allows federal courts greater deference in deciding whether abstention is appropriate. In Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494-95 (1942), the Court held that when a federal suit is brought under the Federal Declaratory Judgments Act, 28 U.S.C. § 400, presenting only questions of local laws, the court is under "no compulsion to exercise [] jurisdiction" if a parallel state court proceeding would address the matters in controversy between the parties. In Wilton v. Seven Falls, 515 U.S. 277 (1995), the Court reaffirmed the district courts' broad discretion for abstention when entertaining claims for declaratory judgment. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Id. at 286. Thus, courts are permitted to avoid gratuitous interference with state court matters by abstaining from claims for declaratory judgment, specifically if the state court proceedings would address "the same issues, not governed by federal law, between the same parties." Wilton, 515 U.S. at 282 (citing Brillhart, 316 U.S. at 495).

Therefore, if the federal court believes that the state law questions in controversy between the parties are better suited for resolution in state court, then the federal court may properly abstain from deciding a declaratory judgment claim. Id. Although the Adoptees informed this Court of their pending claims in Maryland and New Jersey, those complaints are not in the record before us. Without reviewing the complaints, we cannot verify whether those state claims will adequately address all of the issues presented in this case. Thus, we will remand this issue for further consideration by the District Court and application of the Brillhart abstention

9

doctrine should the District Court then deem such action appropriate.

III.

The second count in the Appellants' complaint alleges that the New Jersey adult adoption statute, N.J.S.A. 2A:22-1, *et seq.*, is invalid under the Fourteenth Amendment of the U.S. Constitution and the New Jersey State Constitution because it "does not provide for notice to persons or entities interested in or whose interests may be affected by the adoption." Because this claim, on its face, appears to be a facial challenge to the New Jersey adult adoption statute, this Court noted that Fed. R. Civ. P. 24(c) requires that the District Court notify the state attorney general of the claim, providing the state an opportunity to intervene to defend the statute. Although Rule 24(c) places the responsibility on the court to provide notice to the state, it also warns that the party challenging the statute "should" call the matter to the attention of the court. In this case, the record does not indicate any acknowledgment from the District Court or the Appellants of its Rule 24(c) duty. We requested that the parties address the consequences of the failure to comply with Rule 24(c). The Appellants explained that their claim was not actually a facial challenge to the statute, but rather a challenge to the statute as applied in these circumstances. Because this is an appeal of a dismissal under Rule 12(b)(6), we will accept the Appellants' customizing of their claim, despite the otherwise clear language in the complaint. Therefore, we will not take any action with respect to a potential failure to follow Rule 24(c), we will treat the claim as a challenge to the statute as applied, and turn to the merits of the dismissal.

Appellants' preface their ability to collaterally attack the adoption decree on the Restatement (Second) of Judgments § 31(2) (1982). That section states that:

[a] judgment in an action whose purpose is to determine or change a person's status is conclusive with respect to that status upon all other persons, with the following qualifications:

(a) If a person has, under applicable law, an interest in such status such that he is entitled to contest its existence, the judgment is not conclusive upon him unless he was afforded an opportunity to be a party to the actions.

Comment (f) to the Restatement § 31(2) further explains that:

[r]ules governing proceedings to adjudicate status often designate those who must be made parties to, or given notice of, the proceedings. . . . In some instances, a legal interest in the status sufficient to confer that authority has been found to exist as a matter of Constitutional law. Beyond this, applicable statutory and decisional law determines the persons who have such an interest.

10

Although the New Jersey courts have not explored this topic, the District Court correctly found that the New Jersey adult adoption statute on its face only requires that consent, and therefore notice, of an adult adoption proceeding be given to the spouse of the adopting parent. N.J.S.A. 2A:22-1. There is no statutory requirement for notice to third parties. Therefore, the Appellants must show that their protected interest in the adoption proceeding is derived from either the federal or state constitutions.

The District Court dismissed the Appellants' due process claim on two grounds. First, the Court explained that none of the case law cited by the Appellants supported their claim that, as a party whose monetary interest in the Trust could be tangentially affected by the adoption, they were entitled to notice of the adoption proceeding. Second, the Court stated that the disposition of the Trust itself would provide the Appellants with an opportunity to defend their interests, thereby satisfying due process.

A constitutional analysis begins with a presumption that a statute or its application is constitutional, and the challenger bears the burden of proving that a statute is unconstitutional. See I.N.S. v. Chadha, 462 U.S. 919, 944 (1983). However, we are not persuaded that a party's failure to cite sufficient supporting case law is an adequate ground for dismissal under Rule 12(b)(6); it is possible that a party could raise a scenario not yet recognized in prior case law. A court should only grant a motion to dismiss if it is convinced that the plaintiff can prove no set of facts warranting relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). On the other hand, the District Court's second ground for dismissal, finding that the Appellants' due process rights would be satisfied by their ability to defend their rights in the Trust proceedings, strikes closer to the target. We turn now to a more complete analysis of this issue.

At the outset, we note that due process is a flexible doctrine, requiring procedures as the situation demands and dependent upon the circumstances. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); see Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996). Any challenge to a state law, or the application of the law, on due process grounds begins with two inquiries: (1) "whether the State has deprived the claimant of a protected property interest," and (2) "whether the State's procedures comport with due process." Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 195 (2001). Appellants argue that they have a legitimate property interest in Maria's one tenth share of the Trust because the Trust specifically states that if Maria died without issue, her share would be divided among them as the remaining beneficiaries. However, assuming arguendo the Appellants' assertion of a property interest in Maria's one tenth share of the Trust,[10] we do not

_____

[10] As will be discussed below, the Appellants had no property interest in Maria Fenton's share of the Trust at the

11

believe that the State's action in granting the adoptions actually worked to deprive the claimants of a property interest.

To support their argument, the Appellants cite to a line of Supreme Court cases acknowledging that natural fathers have a due process right to notice of adoption proceedings if those proceedings would extinguish their parental rights. See Armstrong v. Manzo, 380 U.S. 545, 550 (1965) (recognizing a natural father's liberty interest in a parental relationship and requiring notice of an adoption to satisfy the father's due process rights); Lehr v. Robertson, 463 U.S. 248, 264 (1983) (holding that a state may satisfy due process through a putative father's registry, which places the father's right to notice within his control). Appellants would have this Court interpret these cases to establish a rule that parties whose economic interest may be affected by an adoption are entitled to either notice of the proceeding or an alternative mechanism to assert their right to notice. Yet, these cases are distinguished from the scenario before us because in both Armstrong and Lehr, the adoption proceeding itself extinguished the natural fathers' liberty interest in their parental status. In this case, the New Jersey adoption proceeding did not purport to or actually determine the Appellants' interest in the Trust. Rather, the adoption proceeding simply created a parental relationship between Maria and

_____

time of the adoptions, but only an interest in a potential claim if certain conditions were met at the time of Maria's death.

her second cousin adoptees. What, if any, effect the adoption had on the interests in the Trust of the other beneficiaries was a matter for the trustees and the Maryland courts.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). The Appellants' claim of a property interest in Maria's one-tenth share of the Trust will be determined by the trustees, based on their interpretation of the requirements specified in the Trust itself, or by a court deciding the issue under Maryland law. The New Jersey court, by granting the adoptions, exercised no jurisdiction or authority over any property interest in the Trust. Therefore, the "meaningful time" for the Appellants to be heard will occur when either the District Court on remand elects to address the state law claim under diversity jurisdiction, or abstains, leaving the issue to the Maryland state court.

The Supreme Court's recent opinion in Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189 (2001) further supports our conclusion that the Appellants did not have a due process right to notice in this case. In Lujan, a California agency, acting under state law, withheld payments to a construction contractor because the agency alleged that the contractor had violated state minimum wage laws. 532 U.S. at 191. The contractor complained that the withholding violated its due process rights because the state did not provide notice or

a hearing before withholding the payments. The Court explained that the state's actions did not deprive the contractor of any property over which it could exercise present ownership dominion; the contractors' interest was limited to a future claim for payment under a contract with the state. Id. at 196. Therefore, the Court held that "if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." Id. at 197.

Applying the Lujan holding to the case at bar, it is clear that the Appellants' potential claim to Maria's interest in the Trust at the time of the adoption was not based on present ownership dominion. The potential claim to Maria's share of the Trust remained to be determined by the trustees or the Maryland courts. We hold, therefore, that the Appellants, as third parties, had no due process right to notice of the New Jersey adoption proceedings. The Appellants' ability to pursue their claim in the appropriate state court at the time of the Trust disposition provides all the process that is due them under the Fourteenth Amendment of the United States Constitution.

The New Jersey Supreme Court has noted that Article 1, paragraph 1 of the New Jersey Constitution encompasses the same due process rights guaranteed under the Federal Constitution. Montville Tp. v. Block 69, Lot 10, 376 A.2d 909, 917 (N.J. 1977). Although the New Jersey Supreme Court has interpreted the state constitution in a few areas to provide greater rights than the federal constitution, it has never announced such a position that would encompass the due process rights to notice of the adoption requested by the Appellants in this case. See, e.g., State v. Johnson, 346 A.2d 66 (N.J. 1975) (announcing state constitutional rights in the context of search and seizure); Burlington County N.A.A.C.P. v. Twp. of Mount Laurel, 336 A.2d 713 (N.J. 1975) (announcing state constitutional rights in the context of zoning). Therefore, we believe that the New Jersey Supreme Court would reach the same conclusion under the New Jersey Constitution as we have reached under the federal constitutional analysis. Accordingly, the District Court's dismissal of the due process claim will be affirmed.[11]

---

[11] The Adoptees raise two alternate arguments to support their position. First, they assert that when Maria's attorney informed the trustees in 1990 of her intention to adopt her cousins and sought an opinion on whether the adoption would entitle her adopted children to inherit from the Trust, she provided constructive notice to the beneficiaries satisfying any due process requirements. Second, the Adoptees argue that laches bars this suit, given that the Appellants learned of the adoption in 1991 but waited to challenge the adoption until after Maria's death. Because we hold that the Appellants did not have a due process right to notice of the adoption proceeding, we need not reach these issues.

13

## IV.

Because we hold that the District Court erred in its finding of no jurisdiction to hear the Appellants' claims based on state law grounds, we will vacate the dismissal of those claims. However, because the Appellants seek declaratory judgment on state law claims which seem to address the same state law issues currently pending in state court, abstention on these claims may be appropriate under Brillhart. This case will be remanded to the District Court with directions to vacate its orders to dismiss, review the state law claims, and determine whether in the exercise of its discretion, it will abstain. In the event that the District Court does not abstain, it should decide the germane state law claims. Finally, the District Court's order granting defendants' motion to dismiss the Appellants' due process claim is hereby affirmed. Each side to bear its own costs.